IN THE
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **DIANA LUNA,** § | | |
| Plaintiff, § | CA No. _____ | |
| § | | |
| v. § | | |
| § | JURY DEMANDED | |
| **HEALTH CARE** § | | |
| **SERVICE CORPORATION** § | | |
| **d/b/a BLUE CROSS BLUE** § | | |
| **SHIELD OF TEXAS,** § | | |
| Defendant. § | | |

## PLAINTIFF'S ORIGINAL COMPLAINT

### 1. PRELIMINARY STATEMENT

1.1. Plaintiff demands a jury for any and all issues triable to a jury. This action seeks compensatory, liquidated and actual/economic damages; and costs and attorney's fees for the claims suffered by Plaintiff, DIANA LUNA, due to HEALTH CARE SERVICE CORPORATION d/b/a BLUE CROSS BLUE SHIELD OF TEXAS, (referred to herein as "Defendant" or "HCSC") taking adverse employment action against ultimately resulting in the wrongful termination of her employment as explained herein.

1.2 This action arises under the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. Section 12112 and/or Americans with Disabilities Amendments Act of 2008 (ADA, ADAAA), the Family and Medical Leave Act (FMLA), Title VII of the Civil Rights Act of 1964 (Title VII), as amended, and the Texas Commission on Human Rights Act (TCHRA) (Chapter 21 of the Texas Labor Code).

### 2. JURISDICTION

2.1. Jurisdiction is invoked pursuant to 28 U.S.C. § 1343(a)(4) and 28 U.S.C. § 1331.

2.2. Costs and attorney's fees may be awarded pursuant to 42 U.S.C. § 12205 and Rule 54, FRCP.

2.3. Compensatory damages may be awarded pursuant to 42 U.S.C. § 198la(a)(1) and 42 U.S.C. § 198la(a)(2)(b)(1).

2.4. Punitive damages may be awarded pursuant to 42 U.S.C. § 1981a(a)(1) and 42 U.S.C. § 1981a(a)(2)(b)(1).

### 3. VENUE

3.1. Venue of this action is proper in this court, pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district and Plaintiff, at all times while an employee of Defendant, resided in this judicial district.

### 4. PARTIES

4.1. Plaintiff is a former employee of Defendants and resides in Wylie, Collin County, Texas.

4.2. Defendant HEALTH CARE SERVICE CORPORATION d/b/a BLUE CROSS BLUE SHIELD OF TEXAS is an employer qualified to do business in Texas and employs more than 50 regular employees. Defendant HEALTH CARE SERVICE CORPORATION d/b/a BLUE CROSS BLUE SHIELD OF TEXAS is a corporation that is incorporated under the laws of the State of Illinois and has its principal place of business in the State of Illinois. Defendant does not have a registered agent for service of process in the State of Texas. It may be served with process by serving any officer or agent of the corporation at 300 East Randolph Street, Chicago, Illinois 60601.

### 5. STATEMENT OF FACTS

5.1 Plaintiff began her employment with Defendant on September 11, 2006.

5.2   Plaintiff dedicated 13+ years of her professional career to Defendant, working as a Senior Infrastructure Service Transition Analyst. She performed well and intended to continue to work with the company until retirement.

5.3   In about June 2018, Plaintiff began to experience discrimination and harassment in the workplace based on her race and national origin.

5.4   This harassment at least in part, exacerbated Plaintiff's mental health disabilities and she informed Defendant of these disabilities and the need for reasonable accommodations.

5.5   Plaintiff requested a reasonable accommodation, supported by medical documentation. Plaintiff's medical documentation, which she provided to Defendant, explained that she was experiencing a hostile work environment, that she suffered from depression and "situational environmental stress worsened anxiety with co-workers (social anxiety)" in response to the question, "[P]lease describe how this diagnosis adversely impacts the Patient's ability to perform the Patient's essential job functions."

5.7   Additionally, when asked, "[D]escribe your physical or mental condition(s) affecting your ability to do the essential functions of your job," Plaintiff responded "[M]ental condition is depression and anxiety."

5.8   With notice of Plaintiff being subjected to discrimination and harassment in the workplace, that Plaintiff suffered from mental health disabilities and that her doctor requested that she be accommodated by being allowed to work remotely, Defendant closed the case on October 22, 2019 without engaging in a good faith interactive process to see if this accommodation request could be granted.

5.9   Plaintiff was well aware of other employees outside of her protected class (based on race and disability) who worked remotely. In fact, Plaintiff was allowed to work remotely

        approximately two (2) times per week (sometimes more) prior to requesting to work remotely full time as a reasonable accommodation for her disabilities. Therefore, Plaintiff could perform the essential functions of her job while working remotely and granting this request would not have been an undue burden on HCSC.

5.10    Plaintiff provided medical documentation putting Defendant on notice of her disability and what accommodation was needed. When she was denied that accommodation, she saw no other recourse but to take FMLA protected leave to make sure that her mental health was not put at further risk.

5.11    Plaintiff is of Native American and Mexican American descent. Ms. Cara Gilmore (Caucasian), Plaintiff's Team Lead, made multiple racially offensive statements to her including but not limited to, (1) telling Plaintiff she needed to go find a job she was more suited for like leaf blowing, (2) telling Plaintiff she stinks like all of her people stink, and (3) telling Plaintiff that she needs to go back on the reservation.

5.12    Plaintiff reported these comments to Defendant's management including Scott Margolin- Director, Bill Giambalvo – Senior VP, Hanh Tran, Senior Director, Richard Chandler, Senior Director and Dilip Patel, Senior VP. Plaintiff reported these racially derogatory comments because they were offensive to her and she was trained in Defendant's annual training that this type of behavior was unacceptable.

5.13    Unfortunately, despite Plaintiff's reports and Defendant's alleged policies, Defendant did not take prompt remedial action to address Plaintiff's reports of discrimination. After making her complaint, when Plaintiff was contacted by Defendant's human resources, she was told that this was just the way Ms. Gilmore behaved and if Plaintiff wanted to work in corporate America, she needed to grow thicker skin.

5.14   In July 2019, when Plaintiff again complained about Ms. Gilmore's behavior and comments, she was told by the new human resources representative, Lori Russell, that the issue had been addressed and she should not have any further issues.

5.15   Unfortunately, this was not the case and Ms. Gilmore's negative treatment and harassment continued. From July - August 2019, Plaintiff was subjected to multiple incidents of continued racial discrimination and harassment including but not limited to:

- Ms. Gilmore slamming a door in Plaintiff's face.
- Ms. Gilmore purposely omitting important information that affected Plaintiff's job duties.
- Ms. Gilmore confronted Plaintiff in the restroom and threatened that she was not going to stop until Plaintiff was an acholic and stated that no one would believe Plaintiff, a "spic" over a white woman.
- Ms. Gilmore approached Plaintiff's desk around lunch time and told her that she hated her and all of her kind.

5.16   The racial discrimination, harassment and hostile work environment Plaintiff was subjected to, continued to deteriorate her mental health. In many instances, when Ms. Gilmore would harass Plaintiff, Plaintiff would visibly shake and cry after the incident due to the mental and emotional distress she endured. Plaintiff suffered from mental health disabilities that were exacerbated by these work conditions.

5.17   In August 2019, Plaintiff experienced her first anxiety attack while at work and informed Senior Director, Hahn Tran, of the incident. It was after this anxiety attack that Plaintiff requested the reasonable accommodations explained herein.

5.18   After attempts to address the discrimination she faced with internal complaints to Defendant failed, Plaintiff then filed an EEOC Charge of Discrimination on December 28, 2019.

5.19   As part of the EEOC investigation, Defendant responded to Plaintiff's charge of

discrimination on February 17, 2020. Less than three (3) months later, Plaintiff was terminated on May 1, 2020.

### 6. CONDITIONS PRECEDENT

6.1 All conditions precedent to jurisdiction have occurred or been complied with.

6.2 Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC").

6.3 This lawsuit was filed within ninety (90) days of Plaintiff receiving her Notice of Right to Sue from the EEOC.

### 7. CAUSES OF ACTION

*Disability/Perceived Disability Discrimination*
*(ADA/ADAAA and TCHRA)*

7.1 Plaintiff incorporates by reference each of the facts and allegations set forth above as if fully set forth herein.

7.2 Defendants were Plaintiff's employer within the meaning of the ADA and TCHRA

7.3 Defendants had an obligation under ADA and the TCHRA to maintain a work environment free from discrimination and harassment based on an individual's disability.

7.4 Plaintiff is a member of protected classes under the ADA and the TCHRA based upon her disability and alleges that she is disabled, as defined under the ADA (as amended).

7.5 Plaintiff alleges, in the alternative, that Defendants improperly regarded her as disabled, as defined under the ADA and the TCHRA (as amended).

7.6 Defendants, by and through its agents, subjected Plaintiff to discrimination based upon her disability or perceived disability.

7.7    The discrimination complained of affected a term, privilege and/or condition of Plaintiff's employment when she was subjected to negative treatment and statements based on her disability/perceived disability and was ultimately wrongfully terminated.

7.8    As a result of the discrimination she suffered, Plaintiff has incurred economic losses, including lost income and employment benefits. Accordingly, Plaintiff seeks an award of back pay, front pay, compensatory and any other damages available under the statute, as may be required to correct the unlawful employment practices.

7.9    By engaging in the conduct set forth above, Defendants acted intentionally, with reckless disregard for its obligations under the law and conscious indifference to Plaintiff's rights to equal employment opportunities. Defendants' conduct, as alleged herein, was malicious, oppressive, reprehensible and inexcusable. Accordingly, Plaintiff is entitled to an award of punitive damages in an amount to be determined by the jury at trial.

### *Race and National Origin Discrimination*
### *(Title VII and TCHRA)*

7.10   Plaintiff incorporates by reference each of the facts and allegations set forth above as if fully set forth herein.

7.11   Plaintiff is a member of a protected class under Title VII and the TCHRA based on her race and national origin as a Native American.

7.12   Plaintiff suffered an adverse employment action,

7.13   Plaintiff was qualified for the position.

7.14   Plaintiff was replaced by someone outside the protected class and/or was treated less favorably from similarly situated employees outside of her protected class.

### *FMLA Retaliation & Interference*

7.15   Plaintiff incorporates by reference each of the facts and allegations set forth above as if fully set forth herein.

7.16   Plaintiff was qualified for medical leave under the FMLA.

7.17   Plaintiff invoked her right to FMLA-qualifying leave.

7.18   Plaintiff suffered an adverse action causally related to her invocation of FMLA rights when her employment was terminated.

## 8.   PRAYER

8.1   WHEREFORE, Plaintiff prays the Court order to award such relief including the following:

8.1.1   Award Plaintiff actual damages;

8.1.2   Order Defendants to pay Plaintiff back pay and front pay and benefits;

8.1.3   Award Plaintiff compensatory damages for mental anguish;

8.1.4   Award Plaintiff punitive damages to be determined by the trier of fact;

8.1.5   Grant Plaintiff pre-judgment and post-judgment interest;

8.1.6   Order Defendants to pay Plaintiff's costs and attorney's fees in this action; and,

8.1.7   Order and grant such other relief as is proper and just.

        Respectfully Submitted,

        ***/s/ Jacques P. Leeds***
        Jacques P. Leeds
        Federal I.D. No. 2526879
        State Bar No. 24092678
        **LEEDS LAW FIRM, PLLC**
        700 Milam Street, Suite 1300
        Houston, TX 77002
        Telephone: 713-492-2906
        Facsimile: 832-787-1020
        jacques@jleedslawfirm.com
        Attorney-in-Charge for Plaintiff